UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAMION Barnett,<br><br>Defendant. | Case No. 25-MJ-132 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

On July 14, 2025, officers arrested the defendant, Damion Barnett, after he fled and tossed a Glock 19 pistol, loaded with 1 round in the chamber and 22 rounds in an extended magazine, into a backyard behind a residential neighborhood. Barnett illegally possessed this firearm just months into a three-year term of supervised released stemming from his 2022 carjacking conviction. Despite having spent over two years incarcerated, Barnett illegally possessed a deadly firearm and put the public at risk. Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, Barnett should be detained pending trial.

**I.   Procedural History**

On July 15, 2025, a Complaint was filed in DC Superior Court case number 2025-CF2—08048, charging Barnett with Unlawful Possession of a Firearm; Carrying a Pistol without a License; and Unlawful Discarding of a Firearm. On July 18, 2025, a preliminary hearing was held,

at which the Court found probable cause and ordered Barnett held because it could not fashion a set of release conditions that would ensure the safety of the community.

On July 30, 2025, a Complaint was filed in this Court, charging Barnett with one count of Felon in Possession under 18 U.S.C. § 922(g). An initial appearance was held on August 1, 2025, and the Government made a motion for pretrial detention. Barnett was preliminary held and a detention hearing was set for August 5, 2025.

The government now respectfully submits this memorandum in support of its motion for pretrial detention.

## II.     Legal Authority and Argument

The United States seeks detention pursuant to §§ 3142(d)(1)(A)(iii) (Defendant on probation or parole) and 3142(f)(1)(E) (felony involving possession of a firearm), because the defendant is charged with possession of a firearm while he was on supervised release in Superior Court case number 2021-CF3-002134.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Further, the Court shall consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on

other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(2)(B).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

### A. The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention. As set forth below, the defendant was arrested after he discarded a pistol, loaded with an extended magazine, into a backyard in a residential community. At the time, Barnett was less than eight months into a three-year term of supervised release stemming from a 2022 conviction for attempted unarmed carjacking.

On July 14th, 2025, at approximately 17:55, members of the Metropolitan Police Department robbery suppression unit were conducting gun interdiction/robbery suppression activities in the 5th District PSA 506. The officers of the Robbery Suppression Unit were dressed in plain clothes and wearing vests with the word "POLICE" written on the front and back clearly

3

visible for the eye to see. In the past six months, PSA 506, which contains 1110 16th Street, NE, has had (25) reported violent crimes involving a firearm: (6) homicides, (9) assaults with dangerous weapons, and (10) robberies.

As members of the Robbery Suppression Unit were travelling in the 1100 block of 16th Street, NE, Washington D.C., the officers came upon 4-5 individuals standing in front of 1110 16th Street, NE. One of the individuals, later identified as Damion Barnett, was wearing bright pink shorts and a black sweatshirt and was seen smoking a white cigarette, which Officers Mark Minzak and Augustus Thomas believed to be a marijuana cigarette. Upon seeing law enforcement, Barnett handed the white cigarette off to another individual wearing a white shirt and blue jeans in the group.

As soon as Barnett passed off the cigarette, Barnett ran in the opposite direction of Officers Minzak and Thomas's vehicle on 16th Street, NE. *See Figure 1*.



***Figure 1: Barnett running on 16th Street, NE***

Sergeant Terrence Welsh, Jr. and Lieutenant Kenyon Hogans pursued Barnett in the 1100 block of 16th Street, NE. Barnett turned left onto Levis Street, NE, then into an alley. *See Figure 2.*



*Figure 2: Barnett, Circled in Red, Running in Alley*

During the course of the foot pursuit, Sergeant Walsh observed Barnett reach into his waistband area with his right hand and discard a firearm into the air. Barnett was apprehended in the rear of 1026 16th Street, NE and placed under arrest.

Officers traced Barnett's flight path in the alley off Levis Street, NE, and recovered a black Glock 19, 9mm semi-automatic firearm bearing serial #CCZU050. *See Figures 3* and *4*.



*Figure 3: Firearm Recovered from Alley*



*Figure 4: Closer View of Firearm*

The firearm was loaded with (1) round of ammunition in the chamber of the weapon. The firearm had an additional (22) rounds of ammunition in the magazine which has a capacity of (31) rounds of ammunition. *See Figure 5*.



*Figure 5: Firearm, Magazine, and Ammunition*

Officer Minzak used a handheld Forward-Looking Infrared ("FLIR") thermal imaging device on the object and observed the entire firearm glowing which indicated heat emanating from the firearm. *See Figure 6*. The FLIR is designed to detect heat. Humans naturally generate heat, and that heat is transferred to an object when it is touched by humans and slowly dissipates when it is no longer touched.



*Figure 6: Firearm Shown through Thermal Eye Imagine Device*

A search of the Gun Registration database revealed that Barnett does not have a license to carry a pistol in the District of Columbia, and the firearm is not registered to Barnett in the District of Columbia. A further NCIC/WALES check was conducted and showed that the firearm was reported stolen by the Prince George's County Police Department on November 3, 2024.

A criminal history check of Barnett revealed that he was convicted of a prior felony charge in Washington D.C., Superior Court case number 2021-CF3-002134, which is punishable by more than one year in prison prohibiting him from possessing a firearm.

Accordingly, Barnett would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition.

Here, the nature and circumstances of this offense weigh heavily in favor of detention. Although he is just 22 years old, Barnett choose to illegally possess a dangerous firearm—loaded with over twenty rounds—and discard it in a residential neighborhood. While this charge is a possessory offense, this court has wanted against discounting the inherent dangerousness in

possessing a weapon such as this. *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *21-22 (D.D.C. Feb. 6, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). Moreover, as noted below, the defendant was arrested while on supervised released for a 2022 carjacking conviction in which he at least insinuated that he had a firearm and pressed a cold object to the victim's head while demanding the keys to her car. The fact that committed the instant offense while on supervised release "mak[es] evident his disregard of the law forbidding possession of a firearm and automatically rais[es] concern about whether he can be trusted to comply with any conditions of pretrial release." *Id.* at *23-24.

### B. The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. As then-Chief Judge Howell noted at length in *Blackson*, the "weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." *Blackson*, ECF No. 18 at 20. It is a "common sense consideration," because "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Id*.

The Government's case against Defendant Barnett is robust. Body-worn camera footage shows officers chase Barnett down the street after he fled when he saw cruisers approach. As

9

officers continue to chase Barnett down the alley, Sergeant Walsh can be heard on body-worn camera footage noting that he observed Barnett reach into this waistband, pull out a firearm, and toss it to the side. Officers later discovered that firearm in the alley, and thermal imaging showed that the firearm was still emanating heat from Barnett holding it.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194 at *10. This is such a case, and Barnett should be detained pretrial.

### C. The Defendant's History and Characteristics Merit Detention.

Barnett is currently on supervised release following his conviction in D.C. Superior Court case 2021-CF3-002134, in which was convicted of two counts of attempted unarmed carjacking. In the first carjacking, Barnett entered the victim's car while she was in the passenger seat waiting for her boyfriend, who had gone into a nearby liquor store. Barnett placed a cold object to the side of the victim's head and demanded the keys to the car. Barnett then struck her in the chin with that object and asked for the keys again. The victim eventually handed Barnett the keys, and he drove away. The vehicle was eventually recovered when Barnett was involved in a crash while fleeing a traffic stop. A few weeks later, Barnett approached another victim in a Safeway parking lot, grabbed the victim's arm, and demanded his car keys while insinuating he was armed with a firearm. The victim gave Barnett the keys and drove away. The agreed-upon proffer of facts is attached as Exhibit 1. Barnett eventually pled guilty to two counts of unarmed carjacking and was sentenced to 48 months of incarceration, with a three-year term of supervised release that began

on November 28, 2024. Since his release, Barnett has been on twice weekly drug testing since submitting multiple positive drug results. He last reported to supervision on April 24, 2025, but has been a loss of contact since.

In both carjackings, Barnett was successful at least in part because he struck fear in the victims by insinuating that he had a firearm, ultimately getting them to hand him the keys to their vehicles. No matter whether he did or did not have a firearm at that time, he has now shown a willingness not only to possess a firearm, but to get one illegally, just months into his supervised release and despite court orders barring him from possessing them. He also continues to fail drug tests and has been deemed a loss of contact. In light of his brief but violent history and noncompliance with release conditions, together with the instant offense where the defendant unlawfully possessed a firearm loaded with an extended magazine, he should not be released.

### D. Defendant Barnett Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by Barnett's release, similarly weighs in favor of detention. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The charged offense involves the possession of a highly dangerous weapon loaded with a large-capacity magazine, despite the fact that the defendant is legally barred from such possession as a convicted felon, and despite being on supervised release for that felony. Barnett certainly knew that he was prohibited from possessing firearms because he just spent two years incarcerated for the carjacking convictions.

Judges of this Court have consistently recognized the inherent dangerousness of carrying

a concealed, loaded firearm. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

While the defendant's crime in this case did not result in any direct violence against another, unlawful possession can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously. The defendant's possession of a semi-automatic pistol, loaded with 1 round of ammunition in the chamber and 22 rounds in an extended magazine, and while on supervised release in this jurisdiction, plainly demonstrates his danger to the community. This fourth factor, as with all the three prior factors, weighs heavily in favor of pretrial detention.

## CONCLUSION

The Government respectfully requests that the Court issue an Order granting its motion that Barnett be held without bond pending trial.

                                          Respectfully submitted,

                                          JEANINE FERRIS PIRRO
                                          UNITED STATES ATTORNEY

Dated: August 4, 2025 By: */s/ Jonathan A. Sussler*
Jonathan A. Sussler
N.Y. Bar No. 5973912
Special Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
Federal Major Crimes Section
601 D Street NW
Washington, D.C. 20530
(202) 815-8576
Jonathan.Sussler2@usdoj.gov